|   |   |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 2:12–cr–00273–JCM–VCF |
| vs. | |
| MARY MUSSO, | **ORDER** |
| Defendant. | |

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

***

Before the court is Defendant Mary Musso's Motion to Sever Counts One and Two from Three through Five (#26). The Government filed an Opposition (#27); and Musso Replied (#28).

## I. BACKGROUND

This matter involves Defendant Mary Musso's two alleged real estate fraud schemes. (*See* Indictment (#1) at 2, 5). On July 25, 2012, the Government indicted Musso on five counts of wire fraud in connection with a "tenant improvement scheme," (*see id*. at 1, discussing counts one and two), and a "forged deeds of trust scheme," (*see id*. at 4, discussing counts three through five).

**A.     The Tenant Improvement Scheme**

As outlined by the Government's Indictment, the tenant improvement scheme occurred in Las Vegas, Nevada between March 2007 and May 29, 2008. (*Id*. at 1:25). In early March 2007, Musso allegedly contacted victims D.R. and J.S. and represented that victim J.M. was interested in leasing two properties owned by D.R. and J.S. (*Id*. at 2:12–13). On March 21, 2007, and March 30, 2007, Musso allegedly forged J.M.'s signature on leases for both properties, (*id*. at 2:14–17), and soon thereafter forged J.M. on a contract between D.R., J.S., and J.M. for tenant improvements. (*Id*. at 20–21).

1

In reliance on the contract, on May 4, 2007, J.S. and D.R. transferred approximately $1,200,000.00 to a bank account controlled by Musso for improvements on the first property. (*Id*. at 3:11–12). Within days, Musso allegedly transferred $250,000.00, $44,000.00, $127,000.00, and $250,000.00 to various other accounts in an attempt to launder the money. (*Id*. at 3:14–18). On May 10, 2007, J.S. and D.R. made a second transfer of approximately $450,00.00 for improvements on the second property. (*Id*. at 3:19–22). Musso, again, allegedly laundered the funds. (*Id*.)

In mid-July, D.R. demanded that J.M. and Musso return a portion of the funds. (*Id*. at 3:25). In an attempt to induce D.R. to withdraw his demand, on July 26, 2007, Musso allegedly fabricated an e-mail from J.M. to Musso, which stated that the funds could not be returned because doing so would breach a sub-lease. (*Id*. at 4:1). The e-mail also implied that the funds were still available in the account to which D.R. and J.S. had transferred the funds on May 4, 2007. (*Id*. at 4: 2–3). This e-mail serves as the basis of the Government's first wire fraud count in the indictment. (*Id*. at 4:14).

Approximately two weeks later, on August 16, 2007, Musso allegedly fabricated a second e-mail. (*Id*. at 4:5). The second e-mail, which purported to be from J.M., was sent to J.S. and represented that Musso pleaded with J.M. for J.M. to release the funds back to D.R. and J.S. (*Id*. at 4:5–7). This e-mail serves as the basis for the Government's second count of wire fraud. (*Id*. at 4:16).

### B. <u>The Forged Deeds of Trust Scheme</u>

As outlined by the Government's indictment, the forged deeds of trust scheme occurred in Las Vegas, Nevada between July 2010 and September 1, 2010. (*Id*. at 4:20–21). In July 2010—again posing as J.M.'s agent—Musso allegedly sent an e-mail to "hard money" lenders to inquire about obtaining a loan secured by real property owned by J.M. (*Id*. at 5:6–9). Through a series of fraudulent e-mails and e-mail accounts, Musso allegedly induced the lenders to agree to lend money to J.M. (*Id*. at 5:11–12).

Between August 17, 2010, and August 20, 2010, the lenders transferred funds to an account controlled by Musso, not J.M., and recorded a Deed of Trust and a Promissory Note against property

owned by J.M., despite the fact that J.M. had no knowledge of the transaction and never gave Musso permission to encumber the property. (*Id.* at 5:15–17). Like the tenant improvement scheme, Musso allegedly laundered the funds as soon as they were within her possession. (*Id.*) This transaction serves as the basis for the Government's third count of wire fraud. (*Id.* at 6:20).

Between August 24, 2010, and August 26, 2010, Musso allegedly did it again. Posing as J.M.'s agent, Musso caused the lenders to record a second Deed of Trust and a Promissory Note against a second piece of property owned by J.M. (*Id.* at 5:24–26). Again, J.M. had no knowledge of the transaction and never gave Musso permission to encumber the property. (*Id.* at 6:1). This transaction serves as the basis for the Government's fourth count of wire fraud. (*Id.* at 6:22).

On August 27, 2010, Musso caused money related to the August 24–26 fraud to be transferred into her attorney's client-trust account. (*Id.* at 6:4–6). Musso allegedly controlled this account. (*Id.*) The funds were allegedly used to pay off a criminal restitution order against Musso in Clark County District Court. (*Id.* at 6:8). This transaction serves as the basis for the Government's fifth count of wire fraud. (*Id.* at 6:24).

On July 25, 2012, Musso was indicted in connection with these misrepresentations, (*id.* at 1); and, on August 27, 2013, Musso filed the instant motion to sever counts one and two from three through five (#26).

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 8(a) permits for joinder of multiple offenses against a single defendant if the offenses are: (a) of the same or similar character; (b) based on the same act or transaction; *or* (c) connected with or constituting parts of a common scheme or plan. FED. R. CRIM. P. 8(a) (emphasis added). Rule 8 has been broadly construed in favor of joinder because joint trials conserve government funds, minimize inconvenience to witnesses and public authorities, and avoid delays in bringing a defendant to trial. *See United States v. Lane*, 474 U.S. 438, 449 (1986); *United*

*States v. Jawara*, 474 F.3d 565, 572 (9th Cir.2006) (citing *United States v. Friedman*, 445 F.2d 1076, 1082 (9th Cir.1971)). Misjoinder of charges under Rule 8(a) is a question of law reviewed *de novo*. *Id.* (citing *United States v. Terry*, 911 F.2d 272, 276 (9th Cir.1990)). Importantly, "[a]t least one of Rule 8(a)'s three conditions must be satisfied for proper joinder. *Jawara*, 474 F.3d at 573 (citing *United States v. Randazzo*, 80 F.3d 623, 627 (1st Cir.1996); *United States v. Cardwell*, 433 F.3d 378, 385 (4th Cir.2005).

In turn, Federal Rule of Criminal Procedure 14 governs the severance charges. *Yasquez–Yelasco*, 15 F.3d at 845. Even where joinder is proper under Rule 8(a), the court may order separate trials of counts or provide other relief that justice requires if joinder "appears to prejudice a defendant or the government." FED. R. CRIM. P. 14(a). The court's power to order severance "rests within the broad discretion of the District Court as an aspect of its inherent right and duty to manage its own calendar." *United States v. Gay*, 567 F.2d 916, 919 (9th Cir.1978). Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion. *Zafiro v. United States*, 506 U.S. 534, 538–39 (1993). The court's denial of a motion to sever is reviewed for abuse of discretion. *See Fernandez*, 388 F.3d at 1241.

The Ninth Circuit has held that Rule 14 sets a high standard for showing prejudice, and the party seeking severance bears the burden of showing clear, manifest, or undue prejudice of such a magnitude that, without severance, the party will be denied a fair trial. *See United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir.1996); *Vasquez–Velasco*, 15 F.3d at 845. Prejudice arises where: (a) the jury could confuse and cumulate the evidence of one charge to another; (b) the defendant could be prejudicially confounded in presenting his defenses (*i.e.*, where a defendant wishes to testify in his own defense on one count but not another); and (c) the jury could erroneously conclude the defendant is guilty on one charge and therefore convict him on another based on his criminal disposition. *United States v. Johnson*, 820 F.2d 1065, 1070 (9th Cir.1987) (citing *Drew v. United States*, 331 F.2d 85, 88 (D.C.Cir.1964).

4

Additionally, if there is a risk of prejudice, the Ninth Circuit has found it can be minimized with appropriate jury instructions, and "juries are presumed to follow their instructions." *See, e.g.*, *Zafiro*, 506 U.S. at 540 (citing *Richardson v. Marsh*, 480 U.S. 200, 209 (1987)); *see also Vasquez–Velasco*, 15 F.3d at 847 (collecting cases regarding jury instructions concerning compartmentalizing evidence and spillover prejudice).

### III. DISCUSSION

Musso argues that counts one and two should be severed from counts three through five because they are not of the same or similar character, based on the same act or transaction, or connected with or constituting parts of a common scheme or plan. Importantly, only one of Rule 8(a)'s three conditions must be satisfied for proper joinder. *Jawara*, 474 F.3d at 573 (citing *Randazzo*, 80 F.3d at 627; *Cardwell*, 433 F.3d at 385. As discussed in detail below, the court denies Musso's Motion to Sever because the counts in Government's Indictment share the same character.

When determining whether counts in an indictment are of the same character, courts in the Ninth Circuit consider: (1) the elements of the statutory offenses; (2) the temporal proximity of the acts; (3) the likelihood and extent of evidentiary overlap; (4) the physical location of the acts; (5) the *modus operandi* of the crimes; and (6) the identity of the victims. *Jawara*, 474 F.3d at 578. In this case, the Government has satisfied each of the factors.

With regard to the first factor, the elements of Musso's statutory offenses are identical. (*See* Indictment (#1) at 4, 6) (charging Musso with five counts of wire fraud under 18 U.S.C. § 1343). The face of the Government's Indictment, therefore, satisfies the first *Jawara* factor.

With regard to the second factor, Musso argues that "there is no temporal proximity" between counts one and two and three through five because they are separated by approximately two years. (*See* Mot. to Sever (#26) at 4:23) ("Counts One and Two allegedly occurred between March 2007 to May 2008 while Counts Three through Five occurred between July to September 2010"). This argument

suffers from two fatal flaws. First, the offenses in *Jawara* were separated by approximately three and a half years, and the Ninth Circuit found the crimes to be sufficiently proximate. *Jawara*, 474 F.3d at 574. Second, Musso's alleged schemes apparently required months to devise and execute. Whereas the "tenant improvement" scheme lasted from March 2007 to May 29, 2008, the "forged deeds of trust" scheme lasted from July 2010 to September 1, 2010. (*See* Indictment (#1) at 1:25, 4:20–21). In light of the fact that the crimes took a combined seventeen months to execute, the court is not persuaded that a two-year gap between the crimes is sufficient to conclude that the crimes have different characters. The court, therefore, concludes that the counts in the Government's Indictment are sufficiently proximate to satisfy the second *Jawara* factor.

With regard to the third factor, Musso argues that there is no evidentiary overlap because the "witnesses are different between Counts One and Two and Counts Three through Five. (Mot. to Sever (#26) at 5:1–2). This assertion is untrue. In each of the counts detailed in the Government's Indictment, J.M.'s identity, reputation, and wealth were appropriated to perpetrate fraud. (*See infra* § I). As a result, the Government states that its proof at trial will "necessarily include" Musso's use of J.M.'s name, reputation, real estate expertise, and Musso's relationship with J.M. (Gov't's Opp'n (#27) at 4–5). The court, therefore, concludes, that the counts in the Government's Indictment will involve important evidentiary overlap.

With regard to the fourth factor, Musso alleges that the counts should be severed because "the alleged acts were [at] separate and distinct locations." (Mot. to Sever (#26) at 5:6–8). While it is true that the counts in the Indictment involve distinct tracts of real property, all of the property is located in the District of Nevada. (*See* Indictment (#1) at 1:26, 4:21).

With regard to the fifth factor, Musso argues that the *modus operandi* of the crimes was different because the "methods" of the various fraudulent acts were different. (Mot. to Sever at (#26) at 5:9–10). To support this argument, Musso relies on the fact that the tenant improvement scheme primarily

involved the use of fraudulent e-mails whereas the forged deed of trust scheme involved wire transfers. (*Id*.) The court rejects this argument because wire transfers were, in fact, involved in each of the counts of the Government's Indictment. (*See infra* § I). Even if wire transfers were not involved in each of the counts, however, the court finds that the *modus operandi* of the crimes was the same because Musso repeatedly posed as J.M. or J.M.'s agent, and appropriated J.M.'s identity, reputation, wealth, and real estate expertise, in order to perpetrate fraud involving real estate in Nevada. (*Id*.)

With regard to the final factor, Musso argues that the counts should be severed because the victims are different: "Counts One and Two involves Ross and Silvey as victims [whereas] Counts Three through Give involve Morris as the lone victim." (Mot. to Sever (#26) at 5:15–16). While Musso's argument is technically true, it is complete. J.M. (a/k/a Morris) was victimized by Musso's alleged tenant improvement scheme because Musso's appropriated J.M.'s name, e-mail addresses, real estate expertise, and reputation for Musso's own fraudulent purposes.

Because only one of Rule 8(a)'s three conditions must be satisfied for proper joinder, *see Jawara*, 474 F.3d at 573 (citations omitted), and because the Government has satisfied each of the six factors governing whether the counts are of the same or similar character, Musso's motion to sever is denied.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Defendant Mary Musso's Motion to Sever Counts One and Two from Three through Five (#26) is DENIED.

IT IS THEREFORE ORDERED.

DATED this 1st day of October, 2013.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE